**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| United States of America, | No. 20-00170MJ-001-PHX-MTM |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Ricardo Fraser, | |
| Defendant. | |

Before the Court is the government's request to certify the extradition of Ricardo Fraser, submitted on behalf of the Government of France. The French government seeks extradition pursuant to the Extradition Treaty Between the United States of America and France, with Agreed Minute, signed on 23 April, 1996. ("Treaty"). This Court conducted an extradition hearing on May 5, 2021. (Doc. 46). For the reasons explained below, the Court concludes that the government has failed to establish probable cause sufficient to support certification of extradition.

## I. Procedural History.

On October 3, 2019, the High Court (*Tribunal de Grande Instance*) of Pointe-a-Pitre issued an arrest warrant for Fraser. (Doc. 43-1, Ex. 1 at 61-2).[1] On October 6, 2020, the Government of France submitted a formal request to the United States Department of

---

[1] The government filed a Motion in Limine (doc. 43) on April 13, 2021 seeking admission of the extradition packet submitted by the Government of France. The Court granted the motion during the extradition hearing. (Doc. 56, Tr. 5:6-7).

State for the extradition of Fraser. (Doc. 43-1, Ex. 1 at 6).[2] The government, appearing on behalf of the Government of France, filed a Complaint (doc. 1) on July 14, 2020. On September 3, 2020, this Court ordered Fraser detained pending an extradition hearing. (Doc. 8). After several continuances (docs. 11, 13, 26, 30, 41, 45), the Court conducted an extradition hearing on May 5, 2021. (Doc. 46). Fraser appeared via teleconference.[3]

## II.    The Extradition Request.

The Court recounts the facts presented by the government in support of extradition. On July 14, 2019, United States citizens Bria Robinson and Hasani Watson were stopped by French customs officials in Guadeloupe, a French overseas *department* located in the Lesser Antilles island chain in the Caribbean Sea. A search of Robinson and Watson's suitcases by French authorities found three packages of cocaine totaling 4.276 kilograms.[4] (Doc. 43-1, Ex. 1 at 51).

Robinson and Watson identified Fraser as having sent them to Guadeloupe. Robinson and Watson told French authorities that Fraser had wired them money via Western Union and sent them to Saint Martin to collect cocaine from an unidentified third-party. (*Id*). After the cocaine was collected, Robinson and Watson were to travel to Paris, France via Guadeloupe. (*Id*). The French government referenced that it is in possession of SMS messages between Fraser and Robinson that "explicitly referred to the delivery of suitcases and the collection of money." (*Id*).

## III.    Analysis.

### A.    General Principles of Extradition.

Five requirements must be met for the Court to certify extradition. (1) The Court must have subject matter jurisdiction to conduct the extradition proceeding; (2) the Court

---

[2] The French government submitted documents in both English and French. Under Article 12 of the Treaty, "[a]ll documents submitted by the Requesting State shall be translated into the language of the Requested State." (Doc. 43-1, Ex. 1 at 23). The Court therefore treats the English language version of the French government's requesting documents as authoritative in this proceeding.

[3] Fraser withdrew his motion (doc. 39) to appear in person at the hearing and elected to proceed by teleconference.

[4] 4.276 kilograms is equal to approximately 9.427 pounds.

must have personal jurisdiction over the extraditee; (3) the applicable extradition treaty remains in force and effect; (4) the requesting government is seeking to extradite the extraditee for offenses covered by the extradition treaty; and (5) there is competent evidence that the extraditee committed the offenses for which the requesting government seeks extradition. *Santos v. Thomas*, 830 F.3d 987, 991 (9th Cir. 2016).

At the extradition hearing, Fraser conceded that the first four requirements— subject matter jurisdiction, personal jurisdiction, the existence of an applicable extradition treaty, and whether the charged offenses are covered by the treaty—are met. (Doc. 56, Tr. 28:23-29:1). In addition, the Court independently concludes that the first four requirements have been met in this case.

### A.    Subject Matter Jurisdiction.

The Court has subject matter jurisdiction. Rule 57.6(d)(15) of the Local Rules of Criminal Procedure delegates to United States Magistrate Judges in the District of Arizona the responsibility of conducting extradition proceedings consistent with 18 U.S.C. § 3184. *See also In re Extradition of Madrid*, No. MJ-09-01603-TUC-BGM, 2013 WL 265205 at *1 (D. Ariz. Jan. 18, 2013). This Court may exercise subject matter jurisdiction over this extradition proceeding.

### B.    Personal Jurisdiction.

The Court has personal jurisdiction over Fraser. In an extradition proceeding, personal jurisdiction lies in the judicial district where the extraditee is located. *In re Extradition of Mathison*, 974 F. Supp. 2d 1296, 1311 (D. Or. 2013). Fraser was detained in Florence, Arizona on August 27, 2020. (Doc. 9).

### C.    Applicable Extradition Treaty.

The extradition treaty between the United States and France is in effect. According to Stacy Hauf, Attorney Adviser in the Officer of the Legal Adviser for the Department of State, the treaty between the United States and France governing extradition is "in full force and effect." (Doc. 18-1, Ex. 1 at 2).  The State Department's determination as to the status of the extradition treaty is entitled to deference. *Matter of Extradition of Mainero*,

990 F. Supp. 1208, 1217 (S.D. Cal. 1997). The Court concludes the Treaty is valid and in effect at the time of this Order.

### D. Offenses Covered by Treaty.

For an offense to be covered by the extradition treaty, the Court considers whether the offense (1) is listed as an extraditable crime in the treaty; (2) whether the alleged conduct is criminalized in both countries; and (3) whether the offenses in both countries are "substantially analogous." *United States v. Knotek*, 925 F.3d 1118, 1128-29 (9th Cir. 2019). In deciding whether the offenses are "substantially analogous," the Court considers whether "[t]he essential character of the transaction is the same, and made criminal by both statutes." *Id*. at 1131 (internal citations omitted).

#### 1. Extraditable Crime.

The Court concludes the offenses the French government alleges Fraser committed are covered by the extradition treaty. The extradition treaty covers all offenses "if they are punished under the laws in both States by deprivation of liberty for a maximum of at least one year or by a more severe penalty." (Doc. 18-1, Ex. 1 at 14). The treaty also covers offenses that "consist[] of an attempt or a conspiracy to commit, or participation in the commission of" an offense covered by the treaty. (*Id*)

Fraser noted in his extradition brief that at least some of the alleged conduct did not occur in the United States or France. (Doc. 23 at 4). This is because, according to Fraser, the offenses described by the French government took place at least in part on the island of Saint Martin. (*Id*). Saint Martin, according to Fraser, is only partially administered by the government of France; another significant portion of the island—Sint Maarten—is considered a "constituent country" of the Kingdom of the Netherlands. (*Id*, citing Sint Maarten, CIA World Factbook, 2021).[5] The French government acknowledges

---

[5] The Court may take judicial notice of entries in the CIA World Factbook, *see EduMoz, LLC v. Republic of Mozambique*, 968 F. Supp. 2d 1041, 1048 (C.D. Cal. 2013), and that the island of Saint Martin is divided between the Netherlands and France. *See Phillips v. Talty*, 555 F. Supp. 2d 265, 268 n.2 (D.N.H. 2008) ("[T]he court sua sponte takes judicial notice that St. Martin/St. Maarten is an island [...] politically divided (roughly in half) between France (St. Martin) and the Netherlands Antilles (Sint Maarten). The northern half of the island is part of the Overseas Department of Guadaloupe, France, and it employs the French legal system.")

1    that Robinson and Watson took possession of the cocaine in Sint Maarten, the Dutch

2    portion of the island. (Doc. 18-2, Ex. 2 at 43).

3         The Court concludes the Treaty is applicable here even though some conduct may

4    have occurred in the Netherlands. The extradition treaty also provides for extradition "for

5    an extraditable offense committed outside the territory of the Requesting State, when the

6    laws of the Requested State authorize the prosecution or provide for the punishment of

7    that offense in similar circumstances." (Doc. 18-1, Ex. 1 at 15). Robinson and Watson

8    were detained by French customs authorities in Guadeloupe, which is a French Overseas

9    Department. *See Arno v. Club Med. Inc.*, 22 F.3d 1464, 1467 n.1 (9th Cir. 1994)

10   ("Guadeloupe is a French Overseas Department, as much a part of France as Hawaii is of

11   the United States"). Even if some of the alleged criminal conduct occurred outside of

12   France, there is more than sufficient basis to conclude that the underlying offenses

13   allegedly aided and abetted by Fraser occurred in France by the time Robinson and

14   Watson were arrested in French territory. The Treaty is applicable.

                    2.    Criminalization of Underlying Conduct.

16        Fraser was indicted by the French government for six alleged violations of the

17   French Criminal Code: (1) aiding and abetting transport of narcotics; (2) aiding and

18   abetting possession of narcotics; (3) aiding and abetting importation of narcotics; (4)

19   aiding and abetting importation of goods dangerous to health, morals or public safety; (5)

20   aiding and abetting possession of goods dangerous to health, morals or public safety

21   without regular supporting documents; and (6) aiding and abetting transport of goods

22   dangerous to health, morals or public safety without regular supporting documents. (Doc.

23   18-2, Ex. 2 at 24-25).

24        The Court concludes the underlying conduct in this case is criminalized in both

25   France and the United States.  Under federal law, cocaine is considered a "controlled

26   substance" under 21 U.S.C. § 812(a)(4). Possession of cocaine for distribution is

27   unlawful in the United States. 21 U.S.C. § 841(a)(1). Federal law prohibits the

28   importation of controlled substances such as cocaine, *see* 21 U.S.C. § 952(a), and

entering into a conspiracy to import controlled substances. 21 U.S.C. § 963. Aiding and abetting a felony is also prohibited under United States law. 18 U.S.C. § 2.

Each of these offenses is punishable by a sentence of greater than one year.[6] 21 U.S.C. § 841(b)(1)(B)(ii)(II) (minimum sentence of five (5) years for possession of intent to distribute more than 500 grams of cocaine); 21 U.S.C. § 963 (penalty for conspiracy equivalent to penalty for the offense underlying object of the conspiracy); 21 U.S.C. § 960(b)(2)(B)(ii) (minimum sentence of five (5) years for importation of more than 500 grams of cocaine). The Court concludes that the offenses Fraser is accused of committing are criminalized under both United States and French law, and are punishable by greater than one year in prison in both the United States and France.

3.     Substantially Analogous.

The Court concludes French law and United States law are "substantially analogous" in Fraser's case. To be "substantially analogous," statutes need only be "directed to the same basic evil." *Knotek*, 925 F.3d at 1132, quoting *Clarey v. Gregg*, 138 F.3d 764, 766 (9th Cir. 1998). In this case, both the United States and French statutes are directed to the same basic evil of importing dangerous substances into a nation without prior approval from the government, and to prevent dangerous substances from being widely distributed. The Court concludes the laws are "substantially analogous" under *Knotek* to be covered by the Treaty.

**E.     Competent Evidence.**

Although the Court concludes the offenses charged by the French government are covered by the Treaty, the government has not produced sufficient evidence to establish probable cause that Fraser committed the offenses alleged.

A magistrate judge in the Eastern District of California sitting in an extradition case recently discussed the factors a court should consider when assessing the credibility of witness statements to determine whether probable cause has been established:

---

[6] The relevant portions of the French Penal Code Fraser is charged with violating carry a statutory maximum sentence of ten (10) years in prison. (Doc. 43-1, Ex. 1 at 52-56).

In analyzing the evidence here, the standards for determining whether probable cause exists to issue a search warrant is a helpful analogue. To obtain a search warrant, law enforcement must show "by sworn evidence presented to a magistrate that probable cause exists to believe that an offense has been committed and that items related to that offense, such as fruits of the crime, will be found on the premises sought to be searched at the time the warrant is issued." *United States v. Rabe*, 848 F.2d 994, 997 (9th Cir. 1988) (internal citation and quotations omitted). Where a court relies on statements of an informant to find probable cause, it must consider that person's reliability, and basis of knowledge. *See Gates*, 462 U.S. at 230; *see also United States v. Bishop*, 264 F.3d 919, 924 (9th Cir. 2001)("When a search warrant is based solely on an informant's tip, the proper analysis is whether probable cause exists from the totality of the circumstances to determine a sufficient level of reliability and basis of knowledge for the tip."). Under United States law, in determining probable cause a witness's propensity to lie or to offer inconsistent accounts is part of the "totality of circumstances" to be evaluated and cannot be ignored. See *United States v. Hall*, 113 F.3d 157, 159 (9th Cir. 1997) ("If [the informant] was not worthy of belief, then this would not amount to probable cause.").

*In the Matter of the Extradition of Omar Abdulsatar Ammen to the Republic of Iraq*, No. 18-MJ-152-EFB, 2021 WL 1564520 at *13 (E.D. Cal. Apr. 21, 2021). Although an extradition court may consider hearsay statements, *see Santos*, 830 F.3d at 991 (internal citations omitted), the Court is the ultimate arbiter of the statements' credibility in supporting probable cause. *Id.* at 1006 ("[O]ur "function in an extradition hearing is ... to ensure that our judicial standard of probable cause is met by the Requesting Nation.")

In support of the application for extradition, the government included the following evidence provided by the government of France:

- Two photos taken from Robinson's cell phone, including one purporting to show Robinson and Fraser together; and

- Investigative reports from French authorities.

(Doc. 43-1; 43-2). Additionally, Fraser submitted as exhibits at the extradition hearing phone records disclosed during discovery; the Court admitted the exhibits. (*See* doc. 56, Tr. 19:24-28:3). The Court considers each category of evidence in turn.

### 1. Photographs.

The photographic evidence submitted by the government does not establish probable cause that Fraser committed the offenses described by the French government. The government submitted a database entry containing Fraser's general biographic

information, as well as a picture of Fraser, ostensibly to prove that Fraser is depicted in the two photographs. (Doc. 43-1, Ex. 1 at 63). The first photo is what is informally known as a "selfie" taken at an unknown point in time showing individuals who are purported to be Robinson and Fraser. (*Id*. at 64). The second photograph is purported to be a photograph of Fraser taken by an unidentified individual at an unknown time and in an unknown location. (*Id*. at 65).

Although these photographs establish the identity of Fraser and that Fraser and Robinson know each other, they do not establish probable cause that Fraser committed the offenses described by the French government. The French government stated as part of its extradition materials that the photos were obtained from Robinson's phone after Robinson and Watson were arrested. (*Id*. at 51). However, the photos are not dated, and do not depict any unusual or illegal conduct. Rather, they depict ordinary behavior for two individuals the French authorities describe as "companions" in the extradition materials. (*Id*). Therefore, the photographs do not contribute a great deal towards establishing probable cause that Fraser took part in a scheme to smuggle drugs into France.

### 2.   Phone Records.

Although not submitted by the government, the Court also considers the phone records of calls between phones the parties agree were owned by Fraser and Robinson. (Doc. 46, Exs. 100 and 101).  Even considered in conjunction with the photographs, the phone records do not establish probable cause that Fraser committed the offenses described by the French government. The records establish that Fraser contacted Robinson on multiple occasions in a short time period. However, the records only identify the number reached, whether the contact was via text, dial, or some other form of communication, and the duration of the communication. There is no information about what was discussed in a particular communication. Therefore, the records are sufficient to show a connection between  Robinson and Fraser, consistent with the assertion they were in a relationship, which, as discussed in Section III(E)(1) of this Order, the French

government acknowledges Fraser and Robinson were.   However, the mere fact that Robinson and Fraser were involved in a relationship is not sufficient, without more, to show that Fraser orchestrated a scheme to import cocaine into France.

### 3.   Investigative Reports.

The Court concludes the statements by Robinson and Watson are probative of, but insufficient to establish, probable cause that Fraser orchestrated the narcotics smuggling scheme.   Robinson and Watson were detained in Guadeloupe by French authorities, and as explained in greater detail in Sections III(E)(2) and (3), *infra*, knew Fraser prior to travelling to Saint Martin.

Several factors cut against finding the summary of Robinson and Watson's statements to be sufficiently credible to establish probable cause. Although the Federal Rules of Evidence do not apply to extradition proceedings, Fed. R. Evid. 1101(d)(3), the principles undergirding the Rules are nonetheless persuasive in explaining why Robinson and Watson's statements are not conclusive.

As an initial matter, the Court was not provided with the actual statements; the Court received the French government's representations as to what Robinson and Watson told French authorities regarding Fraser's alleged involvement in the importation scheme. (Doc. 43-1, Ex. 1 at 51). This evidence is therefore double hearsay: it is a summary by the French authorities of Robinson and Watson's statements about Fraser's alleged involvement in the crimes alleged.

Robinson and Watson were arrested with more than two kilograms of cocaine in each of their suitcases. (Doc. 43-1, Ex. 1 at 51). Both individuals therefore had a strong incentive to "point the finger" at someone else as the mastermind of the alleged importation scheme. This fact diminishes the credibility of their statements inculpating Fraser.  *See United States v. Vera*, 893 F.3d 689, 693-94 (9th Cir. 2018) ("[C]ourts have closely scrutinized statements made while the declarant is in custody and offered against the accused, and have consistently held that the circumstances render such statements unreliable."), quoting *United States v. Monaco*, 735 F.2d 1173, 1177 (9th Cir. 1984).

Evidence that suffers from credibility issues may nonetheless be probative when supported by additional, corroborating evidence. As the court in *In re Extradition of Strunk*, 293 F. Supp. 2d 1117 (E.D. Cal. 2003) noted:

> Thus, the paid-for confessions, unbelievable in at least one important particular, made by a person who seems generally unworthy of belief, are wobbly indeed at this point, especially with respect to Strunk's involvement. However, as stated above, corroboration of Medel's confessed activities might shore up these wobbly confessions vis-à-vis his allegations against Strunk even if the corroboration does nothing more than solidify the case against Medel.

*Id.* at 1123. Here, no corroborating evidence supports Robinson and Watson's in-custody and double hearsay statements implicating Fraser. The charging documents submitted by the French government refer to SMS messages allegedly sent to Robinson by Fraser that demonstrated that Fraser:

> was not only perfectly aware of the purpose of the trip, in this case a transport of cocaine in suitcases, but that he was also at least the facilitator and organiser, giving the two women the contacts [sic] details generally organising the arrangements for their travel, in particular by providing them with air tickets and some cash. Several SMS messages were extracted [from Robinson's phone] which explicitly referred to the delivery of suitcases and the collection of money.

(Doc. 43-1, Ex. 1 at 51). If provided to the Court, such evidence might serve to demonstrate that Robinson and Fraser's relationship was also for the purpose of trafficking illegal narcotics, and the phone records might corroborate that Fraser had coordinated the smuggling of illicit substances to France using Robinson and Watson as couriers.

The evidence referenced above is not before this Court. A foreign state seeking extradition is neither required to prove its case in this Court, *see Santos*, 830 F.3d at 991, nor submit all evidence in its possession to support extradition, *Strunk*, 293 F. Supp. 2d at 1139. Where, as here, the evidence is not before the extradition court, the extradition court lacks a basis to credit the unsubmitted evidence in support of probable cause. As the *Strunk* court noted:

> While the Philippines is not required to submit all their evidence against the extraditee with a request for extradition, the lack of probable cause connecting Strunk to the crime is highlighted by the fact that corroborating evidence which could have bolstered the case is missing. For example,

- 10 -

1

2

> although the evidence is replete with references to critical cell phone communications, not a single cell phone record is proffered to substantiate that any of those communications took place.

3    *Id.* at 1139.

4         At the extradition hearing, the government did not dispute the absence of

5    corroborating evidence in the extradition packet; the government urged the Court to find

6    probable cause based on the summary of Robinson and Watson's statements contained in

7    the extradition packet. (*See, e.g.* doc. 56, Tr. 17:4-9). According to the government,

8    because the Court is required to "take as true" evidence submitted by the Requesting

9    State, the Court is required to assume as true that Robinson and Watson both identified

10   Fraser as the mastermind of the drug smuggling scheme, and that the SMS messages

11   described by the French government say exactly what the French government represents

12   they say.

13        However, in extradition proceedings, probable cause for extradition is assessed

14   according to the standard for probable cause in American courts. *Santos*, 830 F.3d at

15   1006.  Mere admission of evidence from the requesting country is not enough to establish

16   probable cause. *Id.* ("Simply because evidence has been authenticated does not mean any

17   evidence the government submits is sufficient to satisfy probable cause. Were that the

18   case, the judiciary's role in the extradition process would be meaningless.") As the

19   Supreme Court has stated, an "affidavit must provide the magistrate with a substantial

20   basis for determining the existence of probable cause." *Illinois v. Gates*, 462 U.S. 213,

21   239 (1983). The *Gates* Court also stated:

22

23

> [s]ufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.

24   *Id. See also United States v. Nolan*, 651 F. Supp. 2d 784, 795 (N.D. Ill. 2009) ("[W]hen

25   an extradition request consists of mere conclusory allegations unsupported by substantive

26   evidence, extradition will be denied.") (internal quotations omitted).

27        To be sure, when determining whether probable cause exists, a court cannot

28   engage in a piecemeal, "divide-and-conquer" analysis of the evidence; it must consider

all of the evidence as a whole and decide whether the totality of evidence supports a probable cause determination. *United States v. Valdes-Vega*, 738 F.3d 1074, 1078-79 (9th Cir. 2013) ("[Probable cause analysis] precludes a 'divide-and-conquer analysis' because even though each of the suspect's 'acts was perhaps innocent in itself … taken together, they [may] warrant[] further investigation.'"), quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002). Here, the quantum of evidence in support of probable cause is 1) two photographs of Fraser; 2) a log of phone calls purportedly between Fraser and Robinson, and 3) a brief summary of the French government's investigation of Robinson and Watson, including a summary of their statements. The Court does not have transcripts of the actual statements by Robinson and Watson, or affidavits; further, it does not have the SMS messages that purportedly implicate Fraser, and it does not have any other evidence that supports or corroborates Fraser's alleged role in the drug smuggling scheme.

In light of the foregoing, and considering the extradition packet as a whole, in the absence of additional corroborating evidence in this case, certifying extradition would amount to a "mere ratification of the bare conclusions of others," a practice expressly prohibited by *Gates*. Accordingly, the Court concludes the government has failed to establish probable cause that Fraser committed the offenses alleged by the French government.

**IV.   Conclusion.**

As the Ninth Circuit made clear in *Santos*, the Court's role in extradition proceedings "is indeed a limited one, but this is not to say that a judge … in an extradition proceeding is expected to wield a rubber stamp." 830 F.3d at 1006 (cleaned up). The government has produced information sufficient to show a connection between Fraser and two individuals detained by French authorities for allegedly attempting to smuggle cocaine into France, but has not produced information sufficient to support a finding of probable cause that Fraser aided and abetted the two individuals in their efforts.[7] Accordingly, the standard for extradition has not been met.

---

[7]  In contrast to criminal proceedings, there is no Double Jeopardy prohibition in extradition. The Government of France may seek Fraser's extradition again should they

1   **IT IS HEREBY ORDERED** that the government's request for a certificate of

2   extradition as to Ricardo Fraser is **DENIED**.  Unless there are pending domestic charges

3   on which the government can justify Fraser's continued detention, Fraser must be

4   released from custody. This Court has not been made aware of any such pending charges

5   as of this Order.

6   Dated this 17th day of May, 2021.

7

8   Honorable Michael T. Morrissey

9   United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   provide sufficient evidence to support probable cause that Fraser committed the offenses
alleged by the French authorities. *Strunk*, 293 F. Supp. 2d at 1140.

- 13 -